UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

FRANK ANCONA,

Plaintiff,

v.

MARK N. TEMPLETON, in his official capacity as Director of the Missouri Department of Natural Resources,

WILLIAM J. BRYAN, in his official capacity as Director of the Division of State Parks, Missouri Department of Natural Resources,

DELECIA B. HUITT, in her official capacity as Field Operations Supervisor, Southern Missouri Historic District, Division of State Parks, Missouri Department of Natural Resources, and

WALTER E. BUSCH, in his official capacity as Site Administrator, Fort Davidson State Historic Site,

Defendants.

No. 4:10-cv-626 RWS

**FIRST AMENDED VERIFIED COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF**

## INTRODUCTION

1. Plaintiff is the Imperial Wizard of the Traditionalist American Knights of the Ku Klux Klan, an unincorporated association. Defendants are state employees who, acting in their official capacities, refused Plaintiff and his organization a permit for use of public facilities at Fort Davidson Historical Site on April 17, 2010, because Defendants disagreed with Plaintiff's viewpoint and feared he will spread "historically inaccurate" information. Defendants are also

responsible for the development and implementation of the written and unwritten policies that Plaintiff challenges in this case as infringing on his First Amendment rights.

2. As a result of Defendants' viewpoint discrimination, Plaintiff was denied the same opportunity to utilize the areas of a state park that are enjoyed by other members of the public and their organizations. Unless Defendants and their agents are enjoined from continuing to discriminate against Plaintiff because of his view of history, he will be irreparably harmed by being prevented from peacefully gathering with other like-minded individuals in a public park for the purpose of discussing issues of public interest, a gathering protected by the First and Fourteenth Amendments.

3. This action seeks entry of a declaratory judgment finding that the refusal of Defendants to permit Plaintiff to use the Site on the same terms as other organizations is unconstitutional. It also seeks declaratory judgment that policies governing whether liability insurance or a damage deposit will be required afford more discretion to Defendants than the constitution allows and gives preferential treatment to non-political speech, that additional conditions placed on Plaintiff's use of the Site are unconstitutional, and that a complete ban on handbills in the park violates the First Amendment. Plaintiff also seeks appropriate injunctive relief.

**JURISDICTION AND VENUE**

4. This Court has jurisdiction under 28 U.S.C. §§ 1331, 1343, 2201 and 42 U.S.C. § 1983.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) and E.D. Mo. L.R. 2.07(A)(1). A substantial number of the events giving rise to this action occurred in Iron County, Missouri.

## PARTIES

6. Plaintiff Frank Ancona is a resident of Missouri. He is the Imperial Wizard of the Traditionalist American Knights of the Ku Klux Klan. The Traditionalist American Knights of the Ku Klux Klan is an unincorporated association.

7. Defendant Mark N. Templeton is the director of the Missouri Department of Natural Resources. He is sued in his official capacity.

8. Defendant William J. Bryan is the Director of the Division of State Parks for the Missouri Department of Natural Resources. He is sued in his official capacity.

9. Defendant Delecia B. Huitt is the Field Operations Supervisor, Southern Missouri Historic District, Division of State Parks, Missouri Department of Natural Resources. She is sued in her official capacity.

10. Walter E. Busch is the Site Administrator for the Fort Davidson State Historic Site. He is sued in his official capacity.

## FACTUAL ALLEGATIONS

11. Defendants, acting in their official capacities on behalf of the Missouri Department of Natural Resources, denied Plaintiff's request to rent the large pavilion at Fort Davidson Historic Site for a picnic on April 17, 2010.

12. The seventy-seven acre park was the scene of the 1864 Battle of Pilot Knob. Plaintiff was denied use of the picnic facilities because, according to Defendants, the activities he proposes "are inconsistent with th[e] historical mission and purpose of the site."

13. The park has three sheltered areas that are rented to individuals and organizations. The large shelter can be reserved for $35 a day and is regularly rented to outside organizations

based on their oral request over the telephone.[1]

14. When Plaintiff made his oral request to rent the large shelter, he was required to submit a written request outlining his plans. Upon information and belief, other organizations are not required to make written requests to use the large shelter if nothing will be sold to the public. Plaintiff never indicated any intent to sell any item and never intended to sell any item.

15. Plaintiff addressed his written request to Defendant Walter Busch, Site Administrator, and Fort Davidson State Historic Site. He indicated:

> The Traditionalist American Knights of the Ku Klux Klan would like to rent the big pavilion at your facility and hold a small informal event there. We would just be barbequing for ourselves, not serving food to the public. We would like to place our banner in front of the pavilion while we are there and hang U.S. Flag, Confederate Battle Flag, and our MIOAK Flag on the pavilion. We would also like to have a flier pertaining to the history of the Confederate Battle Flag at Fort Davidson and the reason it was taken down on a table for the public to take if interested. We may also have some games and prizes (bean bag toss, duck pond) for kids. The prizes would be a miniature Confederate Battle Flag.
>
> We only want to draw attention to the plight of our heritage. We are not there to intimidate anyone or any group of people. Some of our members may be robed for historical and educational purposes. The first Imperial Wizard of the Ku Klux Klan was Nathan Bedford Forrest[,] a Confederate General[,] therefore we are interested in preserving the memory of those who died in the Civil War and having the Flag that 60,000 or more Missourians served under be represented here.

16. Plaintiff and other members of his organization take issue with the Department of Natural Resources' decision in or about 2003 to stop flying the Confederate flag at Fort Davidson

---

[1] The Department of Natural Resources website, as revised on March 11, 2010, states: "The picnic and playground area near the visitor center is nestled in a 1960s reforestation pinery. There are three open shelters and while all are largely ADA accessible, one is maintained as such. Water and electric are available at or near each site and modern restrooms are nearby as well. The large shelter can be reserved for $35 a day by calling 573-546-3454." http://mostateparks.com/ftdavidson/misc.htm#picplay (last visited April 13, 2010).

and another site.

17. Other organizations, including churches, are regularly permitted to rent the large pavilion and hang their organizational banner on the pavilion during their use.

18. Defendant Delecia Huitt responded in writing on March 15, 2010. She construed Plaintiff's request to rent the pavilion as a "request for a Special Event Activity Permit to hold a special event[.]" She then denied the permit on the basis that "the activities you have proposed are inconsistent with the historical mission and purpose of the site."

19. Plaintiff, through counsel, contacted Defendant Mark Templeton to ask for reconsideration of the decision or to discover what agreement could be reached about what picnic activities Plaintiff could conduct.

20. General counsel for the Department of Natural Resources responded by explaining Plaintiff's proposed event is inconsistent with the mission of the park because "the public event, as described in the written request, is intended to present historical inaccuracies regarding the Fort Davidson State Historic Site." General counsel stated:

> Mr. Ancona's written request indicates that the purpose of the proposed event is to preserve the memory of those who died in the Civil War by "having the Flag that 60,000 or more Missourians served under be represented ... ," including by making available to the public "a flier pertaining to the history of the Confederate Battle Flag at Fort Davidson ... " However, the Confederate Battle Flag referenced in the request and depicted on the flier is the unit flag of the Army of Northern Virginia. Most, if not all, of the Missouri members of the Rebel army fought under the 1st, 2nd and 3rd National flags and the Missouri Confederate Flags, not the Confederate Battle Flag referenced and depicted on the flier. In addition, the written request and the flier both claim that the Confederate Battle Flag was removed at Fort Davidson. However, the Confederate Battle Flag was never flown at Fort Davidson; instead, it was the 2nd National Flag that was being flown. Similarly, the flier also claims that the "Confederate flag ... served as a symbol for an estimated 60,000 Missouri members of the Rebel army." These and other historical inaccuracies render the

> proposed public event inconsistent with the historical mission and purpose of the Fort Davidson State Historic Site as set forth in the approved Fort Davidson State Historic Site General Management Plan.
>
> The purpose of the Fort Davidson State Historic Site and the mission of DSP in maintaining the site is the preservation and accurate presentation of the site's history. As such, <u>information presented to the public by any outside group at the site must, at a minimum, be accurate.</u> (emphasis added).

21. General Counsel's letter also suggested, for the first time, that Plaintiff's event would produce burdensome logistical problems. Defendant Huitt explained at the hearing on Plaintiff's Motion for Temporary Restraining Order in this case that the concerns involved the responses of others in the park to Plaintiff's gathering.

22. After this Court indicated a temporary restraining order would issue, Plaintiff was notified that he would be required to secure liability insurance in the amount of $300,000.00 per person and $2,000,000.00 per occurrence and post a damage deposit of $250.00. Because of the lack of adequate time between the issuance of the order and the planned event, Plaintiff was unable to secure liability insurance in the full amount required of him by Defendants. He was able to satisfy all other requirements imposed by Defendants.

23. The April 17, 2010, event was relocated to a private venue because of Plaintiff's inability to meet the insurance requirement.

24. Department policy does not require liability insurance for every organization or group that holds a special event. The policy indicates the groups exempt from the requirement have been "approved by DNR legal counsel[.]" The Chamber of Commerce and car clubs are allowed to hold antique car shows at the Site without insurance. Fishing clubs and the Chamber of Commerce are permitted to hold fishing derbies with no insurance requirement. The Site may be used as a stop on a driving tour of car or motorcycle clubs with no insurance. Art clubs are

permitted to hold art shows and civic organizations can have horseshoe pitching tournaments, Easter egg hunts, kite flying contests, or demonstrations—all without securing insurance. Music groups and bluegrass clubs are allowed to have insurance-free public events at the Site. And school groups and civic organizations may have community band events without meeting the insurance requirement. Each type of event exempted from the insurance requirement is open to the public and would involve interaction with the public.

25. The universe of organizations that are permitted to have public events at the Site without providing liability insurance is vast. Although not all of the organizations are still active, there have been more that eight hundred entities registered with the Missouri Secretary of State whose name includes "Chamber of Commerce." There is no limit to the number of groups that could be a fishing, bluegrass, or art club.

26. Although Department policy allows for the imposition of a damage deposit, whether to require the deposit is discretionary. The policy states: "A facility can require a deposit in the form of a cashier's check, money order, or personal check in the amount of two hundred fifty dollars made payable to the Division of State Parks for any sized group that it believes may cause property damage, becomes unruly, or has the potential to leave excessive cleanup problems." There is no policy, nor are there uniform guidelines, to determine whether the damage deposit will be required. When Plaintiff paid the damage deposit after obtaining the temporary restraining order, he was told by the Site director that he was not certain how to handle the damage deposit because he had never before collected one.

27. Plaintiff has requested a permit to hold an organizational event at the Site on June 13, 2010. He has located suitable insurance available for purchase with adequate notice. Because Plaintiff is hesitant to again expend funds for an insurance policy without assurance that

Defendants will not again deny his permit based upon his view of history and because he believes that the imposition of the insurance requirement upon him is unconstitutional in light of the exemptions provided to other groups, Plaintiff has asked for the June 13, 2010 event to be a private event not open to the public. Nevertheless, he plans to hold a public event at the Site as soon as one can be arranged after it is determined whether he should be required to have liability insurance. Plaintiff lost more than $225.00 on the non-refundable policy he purchased for the April 17, 2010 event and does not want to spend, and risk losing, additional funds without his rights having been established.

28. While there has been no change to Department policy or guidelines since entry of the temporary restraining order, Defendants have claimed they will allow Plaintiff and his group to make use of the Site under the "same terms"—including all applicable laws, policies, and guidelines—as other organizations and individuals, but Defendants will require Plaintiff to secure liability insurance and place a damage deposit to have an event at which there will be interaction with the public.

29. While Defendants have issued Plaintiff a permit to hold a private event at a shelter on June 13, 2010, Defendant Walter Busch prepared and signed a list of conditions. He dated his signature on April 27, 2010. The list was provided to Plaintiff for his signature on May 3, 2010. Additional conditions imposed on Plaintiff's June 13, 2010 event that are not included in the policies are: (a) a limitation on the number and content of banners, (b) a restriction on the placement of flags and banners, and (c) a prohibition on the use of amplification equipment for speeches (but not for music).

30. Defendants have informed Plaintiff of, and, upon information and belief, would enforce against Plaintiff, a complete ban on handbills within the park.

**COUNT I**

*First Amendment- Challenge to Denial of Permit Based on Viewpoint or Content*

31. Plaintiff repeats, re-alleges, and incorporates by reference the allegations in the foregoing paragraphs of this Complaint as if fully set forth herein.

32. Defendants refused to allow Plaintiff and his organization to rent and use the pavilion at Fort Davidson Historical Site because Defendants disagree with the historical viewpoint espoused by Plaintiff and members of his organization.

33. Defendants' refusal to allow Plaintiff to have his picnic as proposed on April 17, 2010, was a content-based, viewpoint-based, or both a content-and-viewpoint-based restriction on speech and the freedom to peacefully assemble.

34. The denial of a permit on the grounds proffered by Defendants furthers no compelling government interest.

**COUNT II**

*First Amendment- Challenge to Imposition of Liability Insurance Requirement Upon Plaintiff*

35. Plaintiff repeats, re-alleges, and incorporates by reference the allegations in the foregoing paragraphs of this Complaint as if fully set forth herein.

36. Defendants' policy purports to require organizations seeking a special activity permit to secure a specific level of liability insurance.

37. There are numerous types of organizations that are exempted from the requirement to secure liability insurance.

38. The insurance policy together with the exceptions, on its face and as applied to Plaintiff, provides more discretion to Defendants than permitted under the First Amendment and

gives preferential treatment to non-political speech.

39. The policy regarding liability insurance does not further any compelling government interest.

**COUNT III**

*First Amendment- Challenge to Imposition of Damage Deposit Upon Plaintiff*

40. Plaintiff repeats, re-alleges, and incorporates by reference the allegations in the foregoing paragraphs of this Complaint as if fully set forth herein.

41. Defendants' policy permits them discretion whether to impose, or not, a damage deposit of $250.00 upon a person using the park's facilities.

42. Upon information and belief, Defendants' custom and practice is to *not* require a damage deposit.

43. Defendants had no reason to believe that Plaintiff's group would cause property damage, become unruly, or have the potential to leave excessive cleanup problems.

44. The policy allowing Defendants discretion to require a damage deposit gives Defendants more discretion that the First Amendment allows.

45. The discretionary policy does not further any compelling government interest and is not narrowly tailored to further a significant government interest.

**COUNT IV**

*First Amendment- Challenge to Additional Conditions Placed Upon Plaintiff*

46. Plaintiff repeats, re-alleges, and incorporates by reference the allegations in the foregoing paragraphs of this Complaint as if fully set forth herein.

47. The additional restrictions placed upon Plaintiff's private event planned at the Site for June 13, 2010 are arbitrary, capricious, and not authorized by Defendants' policies.

48. The additional restrictions burden political speech and favor non-political speech.

49. The additional restrictions do not further any compelling government interest and are not narrowly tailored to further a significant government interest.

**COUNT V**

*First Amendment- Challenge to Ban on Handbills in Park*

50. Plaintiff repeats, re-alleges, and incorporates by reference the allegations in the foregoing paragraphs of this Complaint as if fully set forth herein.

51. A complete ban on handbills in a park is not narrowly tailored to further a significant government interest.

52. A complete ban on handbills in a park fails to leave open ample alternative channels of communication.

WHEREFORE, the Plaintiff prays this Court:

A. Enter declaratory judgment finding Defendants' actions and omission to be unconstitutional;

B. Issue interim and permanent injunctive relief;

C. Award Plaintiff costs, including reasonable attorneys fees, pursuant to 42 U.S.C. §1988; and

D. Allow such other and further relief to which Plaintiff may be entitled.

Respectfully submitted,

AMERICAN CIVIL LIBERTIES UNION OF EASTERN MISSOURI

/s/ Anthony E. Rothert
ANTHONY E. ROTHERT, # 518779
American Civil Liberties Union of Eastern Missouri
454 Whittier Street
St. Louis, Missouri 63108
(314) 652-3114
FAX: (314) 652-3112

ATTORNEYS FOR PLAINTIFF

**VERIFICATION**

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the factual allegations in paragraphs 1, 2, and 6-30 are true and correct based on my personal knowledge. I am over the age of 18 and competent to make an affidavit.

/s/ Frank Ancona

**CERTIFICATE OF SERVICE**

I hereby certify that on May 6, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system and a copy was made available electronically to the following electronic filing participants:

Dana W. Tucker
Assistant Attorney General
P.O. Box 861
St. Louis, Missouri 63188

/s/ Anthony E. Rothert