UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| FRANK ANCONA, | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 4:10 CV 626 RWS |
| MARK TEMPLETON, et al., | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

Plaintiff Frank Ancona is the Imperial Wizard of the Traditionalist American Knights of the Ku Klux Klan.  He sought to rent a pavilion at historic Fort Davidson in Iron County, Missouri for a Ku Klux Klan organization event.  Defendants, who are Missouri Division of State Parks officials, denied Ancona's request to use the facilities.  Ancona filed this lawsuit challenging the park officials' decision.  I issued a temporary restraining order which directed park officials to issue Ancona a permit to use the pavilion subject to all the requirements placed on any organization who rents the pavilion for a similar event.  Ancona then filed an amended complaint challenging the Division of State Parks' permit policies.  In response to Ancona's concerns, park officials amended and clarified the permit requirements.  Defendants have moved for summary judgment asserting that amendment of the permit requirements has made Ancona's claim moot.  Because I find that Ancona's claims are moot I will grant Defendant's motion for summary judgment.

*Legal Standard*

Summary judgment is appropriate if the evidence, viewed in the light most favorable to

the nonmoving party, demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Lynn v. Deaconess Medical Center, 160 F.3d 484, 486 (8th Cir. 1998)(citing Fed. R. Civ. P. 56(c)).  The party seeking summary judgment bears the initial responsibility of informing the court of the basis of its motion and identifying those portions of the affidavits, pleadings, depositions, answers to interrogatories, and admissions on file which it believes demonstrates the absence of a genuine issue of material fact.  Celotex Corp. v. Citrate, 477 U.S. 317, 323 (1986).  When such a motion is made and supported by the movant, the nonmoving party may not rest on his pleadings but must produce sufficient evidence to support the existence of the essential elements of his case on which he bears the burden of proof.  Id. at 324.  In resisting a properly supported motion for summary judgment, the plaintiff has an affirmative burden to designate specific facts creating a triable controversy.  Crossley v. Georgia-Pacific Corp., 355 F.3d 1112, 1113 (8th Cir. 2004).

*Background*

The Fort Davidson State Historic Site is located in Iron County, Missouri.  It is the location of the last Confederate offensive into Missouri in the Civil War.  Like other state parks and historical sites it has facilities that may be used by the public for various activities and events.

On March 5, 2010, Plaintiff Ancona made a request to rent a large pavilion at Fort Davidson to host an event for his Ku Klux Klan organization on April 17, 2010.  Ancona planned to display the groups' banner on the front of the pavilion, display a United States flag and Confederate flags, and provide kids' games where the prize would be a miniature

Confederate flag.  The Ku Klux Klan organization also planned to have informational fliers available at the event available to members of the public.  The goal of the event was to "draw attention to the plight of our heritage."  (Compl. at ¶ 15)

Officials of the Missouri Department of Natural Resources, Division of State Parks determined that Ancona's flier was "historically inaccurate" in their view.  On March 15, 2010, Defendant Delecia Huitt, the Field Operations Supervisor of the Missouri Division of State Parks, sent a letter to Ancona denying his request to rent the pavilion.  The denial was based on the Parks Department's position that the flier Ancona proposed to make available to the public was historically inaccurate and inconsistent with the historical mission and purpose of the site.

Ancona filed suit in this Court seeking a temporary restraining order which would allow him to rent the pavilion.  On April 15, 2010, I granted Ancona's motion for a temporary restraining order.  I found that Defendants' disagreement with Ancona about the history of the fort to be an impermissible basis to deny Ancona's use of the pavilion.  I ordered Defendants to allow Ancona to rent the pavilion subject to all the requirements stated in the Division of State Parks' policy manual imposed on organizations holding a similar "special event or activity" at the site.  Those provisions included the payment of a damage deposit and the proof of liability insurance.

On May 6, 2010, Ancona filed an amended complaint in which he challenged the Division of State Parks' published policies for the use of parks.  The amended complaint seeks a declaratory judgment that the policies "governing whether liability insurance or a damage deposit will be required afford more discretion to Defendants than the constitution allows and

gives preferential treatment to non-political speech, that additional conditions placed on Plaintiff's use of Site are unconstitutional, and that a complete ban on handbills in the park violates the First Amendment." (Am. Compl. at ¶ 3).

In response to Ancona's amended complaint, Defendants reviewed the Division of State Parks' policies regarding permits and special use guidelines which apply to all Missouri parks and historic sites. To address the concerns raised by Ancona's lawsuit, Defendants revised the policies on March 28, 2011.

It is undisputed that since Ancona filed his amended complaint his Ku Klux Klan organization has held three events at Fort Davidson. On June13, 2010 and on October 3, 2010, Ancona held events at Fort Davidson and was not required to pay a damage deposit or to secure liability insurance. On April 30, 2011, Ancona held another event at Fort Davidson.

*Discussion*

The Missouri Department of Natural Resources has promulgated a policy manual which covers the use of Missouri parks and historic sites like Fort Davidson. Four of these policies are at issue in this lawsuit.

Two of the policies are found in Section P. entitled "Permits and Special Use Guidelines."

Policy P08 of Section P. is entitled "Special Events and Activities."  P08 requires organizations who use the park to obtain liability insurance for an event which is open to the public. It specifies some public activities that do not require insurance. It also lists the requirements for obtaining a permit such as filing a written request and providing information

including the nature of the event, the expected number of participants, the expected number of spectators, and the dates, times, and locations of the activities.  (Doc. # 16-2 Decl. of Pl. Ex. B.)

Policy P09 of Section P. is entitled "Public Assembly."  It states that the public is able to use park facilities for events like public speeches, weddings, performances, and exhibitions.  A written request to hold such an event will be reviewed by the manager of the specific facility.  (Doc. # 84 Pl.'s Second Am. Stat. of Facts Ex. 4)

Under P09 the manager shall consider, at a minimum, a list of several factors including whether the proposed event will unduly disturb or harass other facility visitors and whether the event will endanger public safety.  Like policy P08, it also lists the requirements for obtaining a permit including making a written request and providing information such as the nature of the event, the expected number of participants, the expected number of spectators, and the dates, times, and locations of the activities.

The two other policies at issue are in the manual section entitled "PU. Public Use Facilities."  Policy PU03 is entitled "Open and Enclosed Shelters" and states that enclosed shelters can be reserved for a fee while open shelters can be used at no charge on a first-come, first-served basis.  (Doc. # 16-1 Decl. of Pl. Ex. A.)  Policy PU04 is entitled "Damage Deposits" and states that a facility can require a damage deposit of $250 from any size group the facility "believes may cause property damage, become unruly, or has the potential to leave excessive cleanup problems."  (Doc. # 16-3 Decl. of Pl. Ex. C.)

In his amended complaint, Ancona claims that these policy requirements were imposed on him in an attempt to obstruct him from having his event at Fort Davidson on April 17,

2010. Ancona's description of the event stated that he wanted to make fliers available to the public, have games for children, and "draw attention to the plight of our heritage." Based on these representations, park officials construed Anacon's proposed use of the pavilion to be a public event. As a result, Ancona was required to comply with the park regulations for such events including paying a damage deposit and procuring liability insurance.

Ancona did not hold his April 17th event because he was unable to secure an appropriate liability insurance policy. Instead, he requested to hold the same event he had planned for April 17 on June 13, 2010. (Doc. # 84 Pl.'s Second Am. Stat. of Facts Ex. 1) Because park officials had already determined that this event would not be completely closed to the public, Ancona was required to submit a written request for a permit as required by PO8 and PO9.

As a result of working with park officials in detailing the scope of the event, Ancona signed and submitted a one-page document to park officials entitled "For the T.A.K bar-be-que permit." (Doc. # 16-1 Decl. of Pl. Ex. A.) The document stated that the event would not be open to the general public. It allowed Ancona to display unlimited flags and to hang two three-feet by six-feet banners which displayed information about the group. The document said that music could be played but any speeches must be made "without a PA system."

Because the June 13, 2010 event would not be open to the public, park officials did not categorize it as a special event. Ancona was not required to obtain liability insurance or to pay a damage deposit. Ancona's group held the event on June 13, 2010.

Ancon applied to hold another event for his Ku Klux Klan organization on October 3, 2010 at Fort Davidson. (Doc. # 84 Pl.'s Second Am. Stat. of Facts Ex. 1) He again filed a

written request which stated the scope of the activity.  Park officials determined the event was not a special event.  Because it was not a special event, Ancona was not required to obtain liability insurance or to pay a damage deposit.  Ancona was also not required to sign a list of restrictions.  In addition, the approval letter from the Division of Parks acknowledges that Ancona's group would be "soliciting the public to sign your petition and handing out brochures and/or informational leaflets."  (Id. Ex. 23)  Ancona's group held its event on October 3, 2010.

Ancona applied to hold another event for his Ku Klux Klan organization at Fort Davidson on April 30, 2011.  Ancona was not required to submit, nor did he submit, a written request for a permit under P08 or P09.  Nor were any restrictions placed on this event.  As with his previous two events, Ancona was not required to either pay a deposit or obtain liability insurance.  (Id. Ex. 1)

Ancona has submitted evidence that other groups who have held events at Fort Davidson were not required to submit to the conditions of P08 and P09.  He states that he wants to have activities at Fort Davidson "without the discretionary or arbitrary imposition of requirements that are not imposed upon others."(Id.)  He seeks an order from this Court allowing him to schedule events at Fort Davidson "without any DNR [Department of Natural Resources] imposed limits on my expressive conduct or its content beyond anything required by generally applicable laws."  (Id.)

Ancona's desire to hold an event at Fort Davidson without the imposition of arbitrary requirements that are not imposed on others is a cognizable claim.  But his desire to hold any event he wants subject only to generally applicable laws is not reasonable.  Park officials must

be given discretion to determine if certain rules or regulations apply to events and activities in Missouri parks.

Title 10, Division 90, Chapter 2 of the Missouri Code of State Regulations provides the Rules of the Department of Natural Resources for state parks administration.  The definition section of the rules states that special rules may be enacted at parks to "improve management, protect resources, or assist with our mission for providing a safe, pleasant, recreational experience."  10 CSR 90-2.010(1)(L).  Public gatherings in parks and historic sites are permitted as long as the planners of the activity meet minimum management and operational criteria.  Id. at 90-2.020(4).  Procedures for requesting permission to use a park for a public gathering, and limits and restrictions are specified in the Parks Division's policy manual.  Id.

The Division of Parks' policy manual gives park officials guidelines and discretion to decide whether, and under what conditions, to approve a permit for a public or special event on park grounds.  Such policies, by their nature, must grant park officials discretion to achieve their mission for providing "a safe, pleasant, recreational experience" for everyone who uses a park.

Defendants have filed a motion for summary judgment asserting that all of Ancona's claims are moot because the policies at issue have all been amended.  As a result, the policies Ancona seeks to change are no longer in force.

Ancona's amended complaint seeks a declaratory judgment that the Division of Parks' policies have impermissibly prevented him from having events at Fort Davidson.  In Count I of his amended complaint, Ancona seeks a ruling that park officials' impermissibly refusal to let him rent the pavilion at Fort Davidson on April 17, 2010 because the officials disagreed

with the historical viewpoint of his brochure.  I have already granted a TRO which overturned the decision of the park officials on the basis of the content of the brochure.  After his amended complaint was filed, Ancona has held three events at Fort Davidson.  There is no evidence that Ancona was not allowed to distribute his brochure at these events.  To the contrary, the permit approval letter Ancona received for his October 3, 2010 event specifically acknowledges that he will be handing out his brochure.  (Doc. # 84 Pl.'s Second Am. Stat. of Facts Ex. 23)

   Moreover, the former policy under which Anacona's original application was denied, P09, has been replaced since Ancona filed his amended complaint.  A new policy P08, implemented on March 28, 2011, replaced both former policies P08 and P09.  The new policy specifically states that no permit for an event shall be denied because of the "political, religious, or other affiliation, or the philosophy or viewpoint of the applicant."  (Defs.' Mem. in Opp. to Pl.'s Am Mot. for Summ. J. Ex. A)  The significant change of policy to expressly prevent the Parks Division from denying a permit application based on an applicant's viewpoint has already been effected.  As a result, this claim is moot.  Powell v. McCormack, 395 U.S. 486, 496 (1969)(a case is moot when the issues presented are no longer 'live').  See also Rosenstiel v. Rodriguez, 101 F.3d 1544, 1548 (8th Cir. 1996)(an amendment to challenged policies can so change the nature of the dispute to make it moot).

   In Count II and Count III of the amended complaint Ancona challenges policies P08 and PU04 requiring insurance and damage deposits for public events.  As I just noted, P08 has

been amended.[1]  PU03 and PU04 were also replaced by a revised policy PU03, effective March 28, 2011.  (Defs.' Mem. in Opp. to Pl.'s Am Mot. for Summ. J. Ex. B)  The revisions in P08 changed the previous policies by providing specific criteria for when a public event application is required for an event.  In addition,it provides an event-liability matrix that lists events that require insurance and bases the amount of insurance on the activity and number of attendees to an event.  Likewise, the revision of PU03 specifically states the amount of, and the circumstances under which, a damage deposit is required from a group using a park shelter.  These revised policies provide narrow and specific requirements for the use of state park and historic site property for events.  These revisions moot Ancona's claims that the previous policies were too open to discretion.

Ancona argues that these claims are not moot simply because the policies have been repealed and replaced with new policies.  He asserts that park officials merely revised the policies in an effort to avoid his claims.  Ancona claims that parks officials will still treat him unfairly under the new policies because of his political viewpoint.  See Northeastern Fla. Chapter v. City of Jacksonville, 508 U.S. 656, 662 n. 3 (1993)(if an amended statute is sufficiently similar to a repealed statute so that challenged conduct continues, the case is not moot).

However, Ancona's argument is not supported by anything except conjecture.  There is not any evidence in the record that Ancona has been denied a permit under the new policies.

---

[1] The procedures for denying a permit for an event in the current version of P08 were approved by the United States Supreme Court in Thomas v. Chicago Park Dist., 534 U.S. 316, 319 (2002).

The policies he challenges in his amended complaint have been repealed. The new policies significantly alter the procedures for approving a special event and determining whether insurance or damage deposits are requited. The substantial changes in the policies at issue have made Ancona's claims moot. Rosenstiel v. Rodriguez, 101 F.3d at 1548. Federation of Advertising Industry Representatives, Inc. v. City of Chicago, 326 F.3d 924, 929 (7th Cir. 2003)(where plaintiff seeks only prospective injunctive relief, his claim becomes moot when the challenged ordinance is repealed).

Moreover, when public officials act to correct alleged illegal conduct by government officials, courts place greater stock in the government's act of self correction as long as the correction appears genuine. Id. Missouri parks officials enacted the new policies in this case to specifically address Ancona's concerns and to create a better defined process for issuing permits for events in Missouri parks. I do not find any evidence in the record that the changes were made to hoodwink Ancona or the Court.

In Count IV of his amended complaint, Ancona asserts that the restrictions placed upon the event he held on June 13, 2010 were arbitrary and capricious and burdened his political speech. These conditions were imposed under P09 which has been repealed. As a result, Anacona's request for a declaratory judgment barring such conditions is moot. In addition, park officials must be able to exercise discretion in controlling activities at Missouri parks in order to fulfill their mission to provide "a safe, pleasant, recreational experience." 10 CSR 90-2.010(1)(L). The restrictions placed on Ancona for his June 13, 2010 event were reasonable and did not burden Ancona's political speech.

In Count V of his amended complaint, Ancona asserts his First Amendment rights are

violated by a complete ban on handbills in Missouri parks. The Division of State Parks does not have such a policy. Revised policy P08 expressly states that no permit shall be denied based on the views of the applicant. Ancona has had three events at Fort Davidson since he filed is amended complaint. There is no evidence that Ancona was not allowed to distribute his brochure at these events. To the contrary, the permit approval letter Ancona received for his October 3, 2010 event specifically acknowledges that he will be handing out his brochure. (Doc. # 84 Pl.'s Second Am. Stat. of Facts Ex. 23)  As a result, this claim is without merit.

Accordingly,

**IT IS HEREBY ORDERED that** Defendants' motion for summary judgment [#64] is **GRANTED**.

**IT IS FURTHER ORDERED that** Plaintiff's amended motion for summary judgment [#83] is **DENIED**.

_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 3rd day of February, 2012.